STEER, Admr., Respondent, v. DWYER, Appellant.

St. Louis Court of Appeals, February 16, 1904.·

1. MINES AND MINING: Royalty. Where the lessor of a zinc mine collected his royalty monthly from his lessees, to his satisfaction, knowing the quality and amount of matter taken from the mine, his administrator can not, after his decease, recover royalty for stuff removed from the mine during his lifetime, which was treated at the time as waste, and proved to be practically worthless when afterwards the lessees attempted to utilize it.

2. NEW TRIAL: Counterclaim. Where the jury gave a verdict allowing a claim which was entirely unfounded and required a reversal of the case, and allowed also a counterclaim which was supported by meager evidence, and it seemed as if the jury had allowed it' more to offset plaintiff's demand than because of its merits, the cause will be remanded for new trial on the counterclaim.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

REVERSED AND REMANDED.

*Orr & Luster* for appellant.

The court erred in refusing to sustain defendant's motion for judgment on the verdict in his favor for the $710, found to be due and owing defendant, there being absolutely no evidence in favor of plaintiff's claim.

*Livingston & Burroughs* for respondent.

Appellant has no cause for contention — no valid right to appeal—and there is nothing in this court to determine, except to affirm the judgment of the trial court. Appellant filed his set-off and obtained judg-

ment for all he claimed. By filing his cross-action he admitted plaintiff's cause of action. A set-off is a cross-debt. It is a mode of defense whereby the defendant acknowledges the justice of plaintiff's demand on the one hand, but on the other sets up a demand of his own to counterbalance it, either in whole or in part. It admits the cause of action. Jones v. Moore, 42 Mo. 413; Hay v. Short, 49 Mo. 139; Zerbe v. Railway, 80 Mo. App. 414-418.

GOODE, J.—On September 10, 1895, P. S. Robinson, now deceased, leased fifteen acres of land in Ozark county to Joseph Bennett and Ham Baldwin, for mining purposes. The clause of the lease with which we are concerned, is this one:

"Said parties of the second part, their heirs, assigns, or legal representatives, agree to pay to the party of the first part as royalty, the sum of $1 per ton for all zinc ore and ten per cent on all other ores mined and removed from said lands."

The lease passed by several assignments to Daniel Dwyer, Price Weatherill and W. F. Gordon, who acquired it in May, 1899. Those parties organized the Alice Mining Company June 19, 1899, and the testimony is that the assignment was really for the benefit of that contemplated corporation, which conducted a mining business on the land from the time it was organized until August, 1900. The Alice Mining Company afterwards sold its property, including the lease, to the Renfrow Zinc Oxide Company, another corporation, which had acquired mining lands in the same locality. Robinson died in 1901, and plaintiff Steer is the administrator of his estate.

This action was brought by the administrator after Robinson's death, on the clause of the lease which we have quoted, to recover the royalty on 3000 tons of zinc ore mined and removed from said premises, the petition alleges, during the lifetime of Robinson, but the royalty

on which the defendant refused to pay to Robinson during his life. It should be stated that in addition to the fifteen acres, the Alice Mining Company had leased or purchased from M. J. Romans, June 10, 1899, two acres near the leasehold, and when they took out ore on the leasehold they hauled it to the two-acre tract and there screened and washed it to separate the ore from the refuse matter. The result was that a dump of tailings or refuse accumulated on the two-acre tract during Robinson's lifetime, and was there when he died. There were about 1100 tons of this stuff. Robinson was paid by check once a month for his royalty, during all the time the Alice Mining Company or Dwyer and his colessees, were mining on the leasehold; that is, from June 1899, to August, 1900. He saw the ore taken out of the mine, hauled to the washer, screened and washed, and saw, too, the dump of tailings. He never received or asked for any royalty on this refuse matter, but accepted checks for his royalty in settlement each month. Sometimes it appears there was a controversy between him and the lessees as to what he was entitled to, but an amicable settlement was always reached and he was paid. The checks are in evidence. After the Renfrow Oxide Company bought the lease and other mineral property in the vicinity, it established an oxide plant in West Plains and hauled the dump of tailings to West Plains to experiment with and see if the material could be turned to account. The experiment was a failure and though the evidence shows they worked up about 500 tons of it, it proved to be worthless—had no market value and could not be utilized.

This litigation began by the administrator Steer suing Dwyer for the royalty on those tailings after Robinson's death. Dwyer, besides disputing the demand, filed a counterclaim for a commission of $710, which he alleged Robinson owed him for selling the leasehold tract of land as the latter's agent.

The jury found a verdict for the administrator for $1,136, and for Dwyer for the full amount of his counter-claim. Judgment for the difference, or $426, was entered against Dwyer, and he appealed.

His counsel insist that the verdict against him for the royalty on the tailings was unsupported by any substantial evidence, and we must concede that contention. Without going into the somewhat doubtful point they make against the finding, that the Alice Mining Company instead of Dwyer is responsible, it suffices to say that in our opinion the evidence shows so clearly as to leave no doubt on the subject, that Robinson was fully paid his royalty on all the ore Dwyer and his associates mined and removed from the leasehold during the time they were operating. It will be observed that the lease provided that Robinson should be paid one dollar royalty on all zinc ore mined and removed from the land. These tailings, as well as the valuable ore, were both mined and removed from the leased premises while Robinson was living and the undisputed evidence shows that he was about the premises, saw the work carried on, the screening and washing of the ore, and the dump of tailings on the nearby two-acre tract. He took his checks in payment of his royalty as it fell due each month, knowing that no royalty on the tailings was covered by them and without complaint. In fact, there can be no doubt that both he and the lessees regarded these tailings as worthless, and there is as little doubt that they were worthless. A witness or two swore they had shipped refuse matter to St. Louis at one time and sold it and that it contained twenty-five or thirty per cent of zinc ore. But those tailings were left when the mined product was separated by hand; not washed and screened. To require payment of royalty on stuff that it is obvious both Robinson and his lessees treated as waste and not the subject of royalty, long after he had been paid all he claimed and after his death would be rank injustice. Steer appears to have brought suit because the

Renfrow Oxide Company afterwards took the tailings to West Plains and endeavored to utilize them; and for that reason he conceived they must have had a value. As Robinson and the lessees concurred in treating them as worthless, as the evidence shows they were of no value, and as he was paid his royalty to his satisfaction, there is no merit in the present demand by his administrator against this defendant. In fact Dwyer did nothing with the tailings. The proof on that point is indisputable. He owned stock in the Renfrow Company and doubtless knew that company experimented with them; but the attempt to make use of them was not his personal act.

We might let the judgment on the counterclaim stand, but think, on the whole, there had better be a retrial. Robinson had given Dwyer an option to purchase the land, for the sale of which the latter asks a commission, or to sell it. This document bears the date of September 2, 1899, and declares time to be of its essence. The time allowed Dwyer to buy or sell in, was four months; the deed from Robinson to the Renfrow Company was executed March 13, 1901, or a year and one-half after the option contract.

Whether the sale was made by virtue of the authority of said contract, whether the time was extended, or whether a new arrangement was effected, we know not. Dwyer introduced the option agreement and, as we gather, relied on it to prove his agency; but it contained no stipulation to pay him a commission if he sold the land, and there is very little, if any, proof in the record that he expected to receive a commission from Robinson or ever demanded one. It looks like the jury allowed the counterclaim more for the purpose of off-setting the administrator's demand than because of its merit. However that may be, we think that in view of the meagre support it has, justice will be promoted by another trial of the issue, in order that the facts may be more fully developed.

The judgment is reversed and the cause remanded in order that there may be a retrial of the counterclaim if the defendant desires it. *Bland, P. J.,* and *Reyburn, J.,* concur.